IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| ROMAN RESENDIZ MENDEZ, § § § *Petitioner*, § § v. § § CIVIL ACTION NO. 9:26-CV-00058 § JUDGE MICHAEL J. TRUNCALE ALEXANDER SANCHEZ, in his official § capacity as Co-Associate Warden of the IAH § Secure Adult Detention Center; GABRIEL § MARTINEZ, in his official capacity; TODD § LYONS, in his official capacity as Acting § Director of Immigration and Customs § Enforcement; KRISTI NOEM, in her official § capacity as Secretary of the Department of § Homeland Security; and PAM BONDI, in her § official capacity as Attorney General of the § United States, § § *Respondents*. § | |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Roman Resendiz Mendez (Resendiz)'s Petition for Writ of Habeas Corpus (the Petition) [Dkt. 1]. For the following reasons, the Petition is **DENIED**.

## I. BACKGROUND

Petitioner Humberto Resendiz Mendez is a Mexican national who entered the United States illegally in 2001. [Dkt. 1 at ¶ 3]. On November 4, 2025, United States Immigration and Customs Enforcement (ICE) detained Resendiz. *Id.* at ¶ 6.

On January 28, 2026, Resendiz brought a habeas corpus petition. [Dkt. 1]. He claims that his detention violates the Immigration and Naturalization Act (INA)[1] and the Fifth Amendment to the United States Constitution. *Id.* at 14–15.

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis

---

[1] 8 U.S.C. § 1101 et seq.

for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

### III. DISCUSSION

#### A. INA

Resendiz first claims to be unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of "applicants for admission" who are not deemed "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). According to Resendiz, aliens who, like him, entered the United States without inspection years ago, are not "applicants for admission" under section 1225(b)(2)(A). Instead, Resendiz argues that 8 U.S.C. § 1226(a) applies to cases like his. Under section 1226(a), an alien "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has discretion to release or "continue to detain" aliens detained pursuant to section 1226(a). *See id.* § 1226(a)(1)–(2).

Section 1225 plainly applies to Resendiz. The statute's first sentence provides that "an alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* An alien has been "admitted" once he has made "lawful entry . . . into the United States *after inspection* and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Together, these provisions establish that an alien is an applicant for admission if he (1) entered the United States without inspection and (2) remains present in the country. *See id.*; § 1225(a)(1).

Resendiz admits that he entered the United States without inspection, and he is still present in the country. *See* [Dkt. 1 at ¶ 3]. Accordingly, he is an "applicant for admission" under section 1225. *See* 8 U.S.C. § 1225(a)(1). Further, by charging him with illegal entry and initiating removal proceedings against him, the Government necessarily found that Resendiz was "not clearly and beyond a doubt entitled to be admitted." *See id.* Thus, section 1225 dictates that Resendiz, an applicant for admission who was not

2

deemed clearly and beyond a doubt entitled to be admitted, "shall be detained" during removal proceedings. *Id.* § 1225(b)(2)(A).

However, the inquiry does not end with section 1225. On its face, section 1226(a) also applies to Resendiz, since it provides that "an alien"—any alien—"may be arrested and detained" pending removal proceedings. § 1226(a). The Attorney General "may continue to detain the alien" or decide to release the alien on bond. § 1226(a)(1)–(2). Because section 1226(a) does not distinguish between aliens who are applicants for admission and those who are not, it squarely conflicts with section 1225 in cases like Resendiz's. *See* § 1225(b)(2)(A); § 1226(a). If section 1225 requires an alien's detention, the Attorney General necessarily has no discretion to release the alien. *See* § 1225(b)(2)(A). Yet, section 1226(a) purports to give the Attorney General that exact discretion. *See* § 1226(a). Something must give.

A "basic principle of statutory construction" easily resolves the conflict between the two provisions. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). When two statutes, one general and one specific, apply to the same subject matter, the more specific statute controls unless the legislature clearly intended otherwise. *See Radzanower*, 426 U.S. at 153; *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). Here, section 1225(b)(2)(A), which applies only to a narrow class of aliens, is the more specific statute. *See* 8 U.S.C. § 1225(b)(2)(A). Further, Congress did not clearly intend for section 1226(a) to displace or supersede section 1225(b)(2)(A).[2] *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Accordingly, section 1225(b)(2)(A), not section 1226(a), applies here. *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Because Resendiz is an applicant for admission who was not found to be clearly entitled to admission, section 1225 provides that he "shall be detained" pending removal. *See* 8 U.S.C. § 1225(b)(2)(A). Accordingly, Resendiz is not entitled to a bond hearing and the Government's failure to afford him a bond hearing does not violate the INA. *See id.*

If that were not enough, the Fifth Circuit recently considered and rejected the same arguments that Resendiz makes here. In *Buenrostro-Mendez v. Bondi*, the Fifth Circuit found that the mandatory detention

---

[2] If section 1226(a) applied in cases like Resendiz's, section 1225(b)(2)(A) would not apply anywhere. The Court doubts that Congress would have enacted section 1225(b)(2)(A) despite knowing that that it would serve no purpose.

procedures in § 1225(b)(2)(A) apply to aliens who have entered the United States without inspection and have been subsequently detained. --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Accordingly, even if this Court were inclined to accept Resendiz's reading of the INA, binding Fifth Circuit precedent would bar it from doing so.

### B. Due Process

Resendiz also argues that the Government violated procedural due process by failing to provide him with a bond hearing before an immigration judge. *See* [Dkt. 1 at ¶ 70]. Even if Resendiz is correct, he still is not entitled to habeas relief. *See Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (Smith, J.). Resendiz's due-process argument is not based on the illegality of his confinement itself, but on the illegality of the Government's failure to provide a bond hearing. *See* [Dkt. 1 at ¶ 70]. Resendiz's unlawful entry and continued unlawful presence in the United States are undisputedly valid reasons for confining him during removal proceedings. *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1227(a)(1)(A). Accordingly, Resendiz's due-process claim is ill-suited for a habeas proceeding, which is "not available to review questions unrelated to the *cause of detention*."[3] *See Pierre*, 525 F.2d at 935 (emphasis added).

Due-process challenges to procedures like bond hearings, which "affect[] the timing of [a prisoner's] release from custody," must normally be brought via a civil-rights action, not a habeas proceeding. *See Carson*, 112 F.3d at 820–21. A habeas petition is the proper device for raising such a challenge only when the challenged procedure would result in the petitioner's automatic release from custody if adequately performed. *See id.*

Here, a properly conducted bond hearing would not invariably result in Resendiz's being granted bond. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Even if an alien receives a bond hearing, the presiding immigration judge may order the alien's continued detention. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). Because a bond hearing would not have guaranteed Resendiz's release from custody, his failure to receive one does not entitle him to habeas relief. *See Carson*, 112 F.3d at 820–21. If a violation of federal law occurred, it

---

[3] *See also Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring).

was not by way of Resendiz's detention, but the Government's failure to provide him with a bond hearing once he was already detained. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly, a habeas proceeding is not the proper arena for Resendiz to raise a due-process challenge to the Government's failure to afford him a bond hearing. *See Carson*, 112 F.3d at 820–21.

### IV. CONCLUSION

It is therefore **ORDERED** that Resendiz's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby **DENIED**. All pending motions are hereby **DENIED AS MOOT**. This constitutes a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 10th day of March, 2026.**

_____
Michael J. Truncale
United States District Judge